## McKENZIE v NEVILLE et

Ohio Appeals, 5th Dist, Delaware Co

No 283. Decided July 17, 1941

E. M. Wickham, Delaware, for plaintiff-appellee.

Hill & Neville, Delaware, for defendants-appellants.

GEIGER, PJ., BARNES and HORNBECK, JJ. (2nd Dist.), sitting by designation.

### OPINION

By GEIGER, PJ.

This matter is before this court upon appeal on questions of law and fact from a final order in the court below.

The amended petition alleges that Sandusky Street is one of the principal streets of the town of Delaware extending through the town from north to south; that another principal street is Central Avenue, extending from east to west and crossing Sandusky Street at right angles; that inlot 5 on the original plat was bounded on the north by Central Avenue and on the west by Sandusky Street; that inlot 12 is immediately south of inlot 5 and fronts upon Sandusky Street extending from said street east; that inlot 6 is bounded on the north by Central Avenue and adjoins inlot 5 on the east and that inlot 11 lies south of inlot 6 and adjoins inlot 12 on the east; that all of said lots are 12½ rods long east and west and 6½ rods wide north and south. Allegations are made concerning prior transfers of inlot 6 and it is alleged that one of the deeds contained a reservation "save and excepting therefrom 10 feet off from the west end of said inlot 6" deeded to one Welcome Martin; that Martin conveyed to one Sweetzer a strip 10 feet wide across the west side of inlot 6; that in 1870 there was an action in partition wherein such proceedings were had that said inlot 6 was equally divided between the parties to that suit excepting therefrom the 10 foot strip off the west side of inlot 6; that Sweetzer conveyed to David McCullough certain land in the west half of inlot 11 providing in the deed that the alley created by the former conveyance should not extend further south than the south half of inlot 11. Plaintiff alleges that he is the owner of the north one-fourth of inlot 12 and the south one-fourth of inlot 5 except about 2 feet off the north side; that the property has a frontage of 48 feet on Sandusky Street and extends east to the alley and that on the inlot he has a large brick building used for storage; that the only means of ingress and egress to the rear of said store building is through said alley from Central Avenue south along the lot line separating said lots; that said 10 foot strip extending from Central Avenue for 12½ rods has been opened and used as a

10 foot alley for more than 100 years; that the alley from Central Avenue to the south line of inlots 11 and 12 has been in use by the property owners abutting on said alley from time immemorial; that the costs of said alley have been paid by abutting property owners including plaintiff.

It is alleged that the defendants are the owners of part of inlot 6 fronting on Central Avenue adjoining said alley and that they own no right in said alley except the right to its use as an alley; that they claim to be the owners of said alley and that they have the right to exclude plaintiff from the use of said alley and have erected obstructions therein; that plaintiff's store building has been leased to the Atlantic & Pacific Tea Company to be used as a store room; that it is necessary to use said alley by trucks; that unless defendants are enjoined said alleyway will be permanently closed to the use of plaintiff's tenants to the damage of the plaintiff's property; that Central Avenue has been improved with reference to the alley; that if defendants are permitted to obstruct the alley permanently and to continue to claim ownership thereof, plaintiff will suffer irreparable damages. The prayer is that a temporary injunction may be allowed against the defendants restraining them from erecting obstructions in said alley.

The defendants, Margaret and James Neville, for answer to the amended petition admit the allegations having reference to the plat and certain other allegations; admit that plaintiff is the owner of certain portions of inlot 5 and inlot 12; admit that they have placed a sign on the west line of said lot indicating that the alley was closed, excluding plaintiff from driving over the defendant's lot. Other matters are denied.

To this answer a reply is filed admitting that the defendants are the owners of a part of the west part of inlot 6; that the part of the inlot owned by the defendants is exclusive of said alley; that they have no title to any part of the alley except the right to use the

same as a means of ingress and egress in connection with other property owners abutting on said alley.

Upon hearing the court found for the plaintiff and that he is entitled to the relief prayed for; that the injunction be made permanent and that the defendants, Margaret Neville and James Neville, are enjoined from placing any obstructions or attempting to close the alley leading from Central Avenue along the line between inlots 5 and 6 and 11 and 12 to the property owned by the plaintiff or interfering with the use thereof by the plaintiff's tenants.

A notice of appeal is given on questions of law and fact.

We have been at some length in exhibiting the claims of the parties to the end that the evidence may be properly applied. The property is valuable and the rights of the parties are important.

The court below recited at length the facts leading up to the present situation in reference to said lots and the possession and use of the alley and states that the testimony is conflicting but that the facts show that the driveway, as now constituted, is not on the 10 foot strip but only on a portion of it and that the balance of the driveway is over on lot 6 and possibly a portion on lot 11 and is approximately an 8-foot driveway instead of 10 feet. The court further found that the owners of the several lots recognized that there was some sort of a driveway between the lots and entered into a contract defining their several rights; that neither the plaintiff or his agents will be permitted to haul garbage over the private driveway; that while large trucks going through day and night are an annoyance to the owners of the adjoining lots, no question has been raised by the pleadings as to an additional burden. The court finally holds that upon the evidence the plaintiff is entitled to a passageway on said private alley from Central Avenue to the rear of his business property abutting on said alleyway and the temporary restraining order was made perpetual.

After the case had been filed in this court, the court considering the character of the evidence to be adduced, finds that it is necessary that the case be referred to a referee who was ordered by the court to file his finding of fact and conclusions of law with the clerk.

By leave of court the plaintiff filed a paper designated "Supplemental petition" in which it was alleged that all the owners adjoining the alley entered into a written agreement. This agreement is of such importance that we are compelled to quote from it liberally. It was dated June 25, 1912, and recited that the undersigned owners of lots and parts of lots 5, 6, 11 and 12, desiring the use of a private driveway, the east half or four feet in width of which is on the west side of land now owned by A. S. Conklin, and fronting on Central Avenue, do agree with each other and bind themselves for the mutual benefit of our said premises to maintain said driveway for **our mutual benefit only.** It being understood and agreed by the signers that said driveway is to be kept and maintained for the benefit and convenience of **said signers of this agreement only,** for ingress and egress of vehicles to and from lands owned by the signers. (Emphasis ours). It is mutually agreed that the cost of improvement of so much of Central Avenue as represents the width of the driveway, namely 8 feet, shall be added to the cost of improving said driveway heretofore paid for by Brown and Conklin, and the total shall be divided by the four parties equally, this to be done for the privilege of using said driveway as now improved. It is also mutually agreed by Williams and said Gas Company that they will not build upon their respective properties any buildings for stabling stock and that said driveway shall not be used for certain prohibitive purposes. This contract is signed by Nellie N. Brown, Genevieve B. Blair, Nancy M. Williams, the predecessor in title to the plaintiff. A. S. Conklin, the predecessor of the defendant herein.

The right to file this petition is emphatically denied by counsel for defendant as will hereafter appear more at length.

The referee after hearing the evidence filed a report in which, in compliance with the direction of the court, he made a finding of facts and conclusions of law. The referee stated, in substance, as a finding of facts:

(1) Both the documentary evidence and the preponderance of the oral testimony appear to indicate the existence of a private alley or driveway of some sort occupying approximately the location of the 10 feet in lot 6 frequently referred to for many years prior to the definite agreement of 1912 and extending south 10 feet into lot 11. The 10 feet are nowhere specifically referred to as an alley, but the deeds conveying a tract in the western part of lot 11 down to and including the deed to the defendant, Mrs. Neville, refer to an alley in the above location.

(2) In the year 1912 a written contract was entered into between Nellie Brown and Genevieve Blair, Nancy Williams, the Gas Company and A. S. Conklin, at that time the owners of parts of lots 5, 6, 11 and 12, providing for the establishment and maintenance of a driveway south from Central Avenue through said lots located on about 4 feet off the west side of lot 6, then owned by Conklin and about 4 feet off the east side of the 10 foot strip. This driveway has since been improved with the knowledge of all the defendants. There is no other driveway in the neighborhood and the existing driveway is the one now sought to be kept closed.

(3) The deed from Nancy Williams to McKenzie and Main and the subsequent deed from the Main heirs to McKenzie specifically includes "all the privileges and appurtenances thereunto belonging".

(4) The deed from Conklin to defendant Mary Margaret Neville in specific terms conveys the property subject to the rights defined in the written agreement.

(5) The agreement is not by any of its terms made specifically binding on the heirs and assigns of the contracting parties.

As conclusions of law the referee finds, after discussing the evidence, that the contract spoken of creates a covenant running with the land and not merely a "license" personal to the respective signatories alone. The referee cites and relies upon **O. Jur., Vol. 11, p. 866, §§16, 17 and 19,** to the effect that the word "assignee" is not necessary to make a covenant run with the land if the covenant relates to a thing.

As to the finding of the referee, the defendants submitted that he erred in his conclusion as contained in his report as follows:

(1) The action of the referee in permitting plaintiff to file an amended petition was contrary to law.

(2) The conclusions of the referee on the evidence adduced in the case was contrary to the weight of the evidence.

(3) The referee committed error in failing to dismiss plaintiff's petition.

(4) The conclusions of the referee on law involved herein are contrary to law.

At the present moment we will confine our ruling to the question as to whether the referee erred in permitting plaintiff to file the amended petition. It is urged that the plaintiff must stand or fall on the issue raised by his original petition and that the amended petition is a departure from the original cause of action. Without discussing this matter at length, we are of the opinion that there was no error in permitting the plaintiff to file in this court the supplemental petition. He has a right to present to the court all the grounds upon which he claims he is entitled to the relief sought and the fact that one cause of action may not harmonize with another previously plead is no reason why the same may not be presented to the court.

The court will not attempt to analyze in detail the testimony of the various witnesses, but will content itself with

a statement of those facts which appear to have an important bearing upon the questions here at issue. We make this brief statement of the controversy.

The plaintiff-appellee, William McKenzie, is the owner of a lot, parts of inlots 5 and 12, fronting on Sandusky Street. The defendant is the owner of property abutting on Central Avenue and adjacent to that strip of land beginning at Central Avenue and extending south to a rather indefinite point in lot 11 but passing the east rear end of the plaintiff's lot. The defendant objecting to the heavy traffic of loaded trucks southward over this so-called alley, sought to prevent its use by placing obstructions on the east four feet of what is now claimed to be an eight foot alley, not definitely located in reference to the original ten foot strip. The plaintiff-appellee seeks to enjoin these obstructions on the ground that the use of the alley extending from his property, which faces on Sandusky Street, on the rear of which he has constructed a building now rented to and used by the Atlantic & Pacific Tea Company, will be impaired by the obstruction of the alley extending from the rear of his property northward to Central Avenue.

The controversy raises the important question (1) Does the plaintiff have such an interest in the use of the alley as to be entitled to an injunction, and, (2) Does the defendant have such an ownership and control of the alley as to be entitled to prevent its use by the erection of the obstructions? Several plats have been filed, none of which help satisfactorily in understanding the case as might be desired. One of the defects which we have noted is that no plat has located the position of the building on the rear of plaintiff's property in relation to the alley in question. Neither do the plats show any structures erected on Sandusky Street which would prevent the service of this building from Sandusky Street rather than from Central Avenue. While such information may not bear definitely upon the solution, yet it would be of an assistance to the court to more correctly understand the situation in reference to the various properties involved.

Briefly, the evidence discloses that in the chain of title through which the defendant finally acquired the property facing upon Central Avenue, there is a deed dated April 24, 1837, to David F. McCullough and Francis Hoor which excepts 10 feet off from the west end of said lot heretofore sold and deeded to Welcome Martin. No deed to Welcome Martin appears in evidence and none can be found. In a deed dated February 8, 1838, from Welcome Martin to Charles Sweetzer conveying parts of inlots 5 and 12, now owned by the plaintiff, there is conveyed "a strip of land 10 feet wide taken off of the west end of lot 6 commencing in the south line of lot 6, 10 feet east of the southeast corner running thence north across the lot to North Street (now Central Avenue) making the strip 10 feet wide off the west side of lot 6." This is the last reference found in the record to said 10 foot strip and by virtue of the deed from Welcome Martin to Charles Sweetzer the title passed to Charles Sweetzer. There the chain is broken and no further reference to 10 feet is made in any conveyance.

On January 12, 1870, an action was brought by Harvey J. McCullough against Olive Hoor seeking partition of lot 6 and in the petition the description notes the exception of "10 feet off the west end of said lot No. 6 before time sold off said lot". A plat is filed in that action showing the 10 feet in question. In this proceeding the west half of lot 6 (excepting the 10 feet) was set off to the heirs of David McCullough and by successive conveyances the title passed to A. S. Conklin, the owner thereof at the time of the contract of 1912 heretofore alluded to. Conklin later conveyed a part of lot 6 adjoining the 10 feet excepted, together with a part of lot 11 to Mary Margaret Neville, the present owner. The deed from William McKenzie to Charles Sweetzer conveys the south 20 feet off of lot 5 and the north 25 feet of lot 12 now owned by the plaintiff, McKenzie. Said

deed also conveys an undivided half of a strip 8 feet wide across the north three-quarters of lot 5 to North Street, also the strip 10 feet wide off the west side of lot 6. A deed from Noah Spalding in 1833 conveyed to Sweetzer the north three-quarters of lot 5 "reserving any rights theretofore conveyed to Joseph Hughes of an alley 6 feet wide off the east end of said lot". He also conveys "all my interest in and to said alley be the same more or less". In 1855 Sweetzer conveyed to McCullough a part of lot 11 in the description of which appears a reference to the alley with a provision that it shall never be open beyond the south line of lot 11. Nancy M. Williams, one of the signers of the contract received her title from Welcome Martin through successive conveyances.

A map of the city of Delaware dated 1854 appears to indicate an alley on the west side of lots 6 and 11 extending from North Street (now Central Avenue) to about the center of lot 11. There is also a plat made by Howard Hoor in the year 1906 where a similar alley appears along the west side of lot 11, said plat being the result of a study of the county records. The city records disclose that in the improvement of Central Avenue in 1912 there was a break in the curb line in approximately the location of the 10 feet before mentioned. This apparently represents an alley according to the city engineer. In none of the deeds mentioning the 10 feet in question is it designated as an alley or driveway, although an 8 foot alley is alluded to. It would seem that the 8 foot alley is made up of 4 feet in the east end of lot 5 and 4 feet from the west end of lot 6, the balance of the 10 foot strip originally excepted from the deed conveying lot 6. If this is true 6 feet of the original 10 feet must now be included in the property owned by the defendant although this does not definitely appear. In the deed from Sweetzer to McCullough there seems to be a recognition of the existence of an alley in the west part of lot 11 which apparently would have coincided with

the extension of 10 feet off of the west side of lot 6. The witnesses are not in harmony in their testimony as to the use made of this driveway. One witness stated that as a delivery boy in 1899 he used the driveway constantly for an access to a barn where horses were kept. He also testified that it was used by other persons whose property abutted on the driveway.

The defendant's witnesses, in the main, admit that there was some kind of a private alley or driveway in the vicinity of a 10 foot strip excepted from the west end of lot 6.

In view of the contract of 1912 between the then owners of the property, it is urged that all the testimony relating to the existence of a north and south alley is of no consequence in that the then owners of the property definitely arrived at an agreement whereby there was to be used by the several signers to the contract, one a predecessor title to plaintiff's property and the other predecessor of the title to the defendant's property, a mutually used alley for the convenience of the property of all signers. This would seem to point the way to a solution of the matter. However, counsel for defendant very strenuously objects to the ruling of the court that by virtue of a deed from Nancy Williams to the plaintiff the plaintiff acquired the right to the use of the alley which was a personal license acquired by Mrs. Williams by virtue of the contract which was a covenant that went with the property.

If the position of counsel in this matter is correct, then we are confronted with the fact that the plaintiff in this case seeks to bring an injunction against the defendant restraining her from interfering with a right which plaintiff does not possess. If he has no right to the use of the alley then it would be of no consequence whether the defendant did or did not have such an ownership in the land included within the boundaries of the alley as would permit her to obstruct the use of the plaintiff for the reason that it is incumbent upon the plaintiff first

to prove his right of action. He must establish his right to an ▆▆▆▆ ▆ injunction by the strength of his own claim and not by the weakness of his adversary's. If his own claim has no validity then he must fail.

The matter is of such importance and is so skillfully presented by each side on behalf of their clients that we feel it would not be a waste of time to set out as briefly as possible the conflicting claims. We have already stated the facts as we understand them and will confine ourselves to the claim of each side as to the law applicable to the case.

The plaintiff relies principally upon the case of **Shields v Titus, 46 Oh St 528**. This case, of course, is not on all fours with the case at bar but announces principles which may properly apply. While the first syllabus is of interest, it is not of sufficient importance to comment upon. The second syllabus is to the effect that where proprietors of adjacent lands by mutual agreement definitely establish the boundaries of a private way previously laid out and appropriate a strip of land embraced therein to be used as a perpetual easement for the benefit of abutting lands and for the common benefit of all and use the way thus established, the agreement may be enforced in equity.

It is claimed by the plaintiff that this case is determinative of the controversy, whereas the defendant urges that it has no relevancy.

There are, of course, differences between the contract of June 25, 1912, and that spoken of in the Titus case. In that contract there were four owners of lots adjacent to the proposed alley, two of whom have deeded their interests to the plaintiff and defendant respectively without definitely attempting to convey their right to the use of the strip which is the subject of the agreement to the present owners. By the contract they bind themselves for the **mutual benefit** of our said property to maintain the driveway for our mutual benefit **only**. It being understood that said driveway is to be kept and maintained for the benefit of the signers of this agreement only for ingress and egress to and from the lands owned by the signers. The cost of the improvement is to be apportioned.

Did Mrs. Williams by conveying her property to the plaintiff convey to him any right to use this alley under the contract made for the mutual benefit of the several properties only?

In the Titus case it is said on page 539,

"There can be but little doubt that the way, as originally established by the owner of the entire tract for the benefit of the parcels conveyed by him to purchasers, became an easement appurtenant to the lands granted, and not merely personal to the grantees. It was established for the beneficial use and enjoyment of the premises conveyed, and, was a burden imposed upon each parcel for the more complete and convenient use of the others. Each parcel, for the purposes of the way over it, became servient to the others, and they, in turn, were subject to a like servitude for its benefits."

It is stated in the Titus case that the exact location and the width of the way were definitely settled by mutual agreement of the owners who placed their fences on the lines agreed upon and thereafter improved and used it without objection.

That is much the same as in the case at bar. The exact location and ownership of the original 10 feet seems to have been lost and the owners agreed to the location of the new 8 foot alley seemingly disregarding the 10 foot right of way.

The fact that there were four owners in the present case does not seem to us to make any difference in the principle involved. If the four agreed definitely to a right of way for the benefit of their several properties, it might be claimed that such an agreement became an easement appurtenant to the lands granted and not merely personal to the grantee.

If it was an easement appurtenant to the land, then the sale of the land by Mrs. Williams to the plaintiff conveyed to the plaintiff, although not mentioned in the deed, such rights as Mrs. Williams had by virtue of the contract.

The case of **Boatman v Lasley, 23 Oh St 614,** is an early case on the question of right of way. It is there held,

"A right of way in gross is a right personal to the grantee, and can not be made assignable or inheritable by any words in the deed by which it was granted."

McIlvaine, J., delivering the opinion of the court, says on page 617 that a mere naked right to pass over the land of another is not an interest in the land itself. Such a right is in its nature personal. It attaches itself to the person of him to whom it is granted and must die with the person. Further, however, he says, where the way is appendate or appurtenant to other land very different considerations arise. There the right attaches to the lands to which the way is appurtenant, because it was granted for the convenience of their occupation without respect to the ownership or number of occupants. In such a case the right of way passes with the dominent estate as an incident thereto. See also **Benninghoff v Skinner, 63 Oh Ap 184.**

We are of the opinion that the contract by its terms is not a covenant running with the land █ and that the deed to plaintiff conveyed no right to use the alley.

Assuming, however, for argument, that there was a covenant running with the land to be enjoyed by the plaintiff, what shall we say about the right Mrs. Williams had and conveyed by her deed to the plaintiff? Was it a right to use the established alley for the purpose of hauling over it heavy trucks as distinguished from the right the parties would ordinarily have had in view when they were simply seeking to provide a contract for the mutual benefit of all the parties? It is vastly different to agree to the use of a narrow right of way for the purposes of light traffic incident to residential use and the use of the same space by heavy trucks, which in order to make the incline are required to back into the property. The use of this property by the frequent hauling of merchandise trucks to the warehouse in the rear of plaintiff's property differs greatly from the purposes covered by the contract where the passageway is "to be kept and maintained for the benefit and convenience of said signers of this agreement only". We think the right that may have been appurtenant to the property and may have become an easement appurtenant to the land is such a right as the parties had in contemplation at the time they made the agreement. It was certainly not contemplated that the right of passing along a residence of one of the land owners should entitle another land owner to build and rent a warehouse which requires heavy truckage, which by its very nature is not within the contemplation of the contract. The contract was to be for the mutual benefit of all. If one of the four appropriated the way to heavy truckage to the detriment of the lighter traffic, it could no longer be for the mutual benefit of all. It practically amounts to one, by virtue of the character of his hauling, appropriating to his own use the available facilities which the others would have an equal right to enjoy. We need but read the testimony of one of the witnesses, Mr. Pettit, found on page 106 of the record and of the defendant, Mr. Neville, found on pages 107 et seq., together with the testimony of certain lady witnesses for the defendant to arrive at the conclusion that the day and night hauling over this private right of way placed a burden upon the other owners never contemplated by the agreement. Mr. Pettit testifies that the trucks were noisy when they went in during the day, that they had to be backed in on account of the grade of the alley, that they were large trucks commonly known as tractor trailer trucks, that they were

a menace to the neighborhood children and that he moved from the neighborhood on account of the disturbance and menace of the haulage by the plaintiff.

The defendant testified that nobody used the passageway but the A. & P. trucks, which took it over when they got in there and that the driveway was of no value to anybody else. They drive big trucks in there and unload them and block the alley. On Sunday and Thursday nights until nearly 12 o'clock they are there for about an hour unloading and throwing boxes around and pulling the chains out of the end gates. The trucks are required to back up the grade. His yard has been run over by the trucks and there are tracks at the curb where they have mashed and destroyed the curb. The conditions due to the truckage do not make it a desirable place for anybody to live. The noise is bad for his invalid wife and he states that if he cannot stand it he will have to get another place.

A Mrs. Edith Abbott living immediately east of the defendant's premises testifies on page 152, et seq., stating that she did not know the driveway was ever used for anything, prior to the usage by the A. & P. trucks. She states that they now wake up the household all hours of the night continually puffing the engines trying to get in and out and when they finally do, making a terrible noise any hour of the night bothering the rest of all.

Paul Gay testified at page 155, et seq. concerning the noise created by the trucks that there had been times at night, especially this winter, when the place was bad and it was icy that where he lived all that he could hear was a continual grinding of motors and the backing up and starting, trying to get in there.

We can not bring ourselves to the view of the plaintiff that in order to service the warehouse he can practically appropriate the driveway and by continuous noisy, offensive driving destroy the rights of the defendants to occupy their property in undisturbed possession. The defendant in this case has taken the law into her hands by erecting a barrier on the four foot portion of the right of way to which she asserts she has a title. If she succeeds in obstructing four feet of the eight foot passageway or even of a ten foot passageway of course the ingress of the trucks is destroyed. As long as her contract or that of her predecessor involved the use of four feet of her land for the common welfare of all the signers, we would not deny her the right to protect herself by erecting a barrier, save that we cannot see how she could erect a barrier against the truckage and still keep the passageway open for the necessary use of ordinary traffic to which all were entitled under the contract.

We have been very much interested in the splendid briefs offered by each side. It is an interesting case upon the determination of which important consequences depend. We need not go further into detail except to suggest that it is unfortunate that in a small city where real estate is abundantly available there should be a situation such as is at present disclosed.

Judgment reversed. Petition dismissed.

BARNES & HORNBECK, JJ., concur in judgment.